**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

SOUTHERN-OWNERS INSURANCE
COMPANY,

    Plaintiff,

v.                                     Case No: 8:21-cv-1904-CEH-MRM

MIDNIGHT TIRES INC., LUIS
RAFAEL MATEU ROBLES, ROY
CHRISTOPHER PULLINS, DONNA
FAYE PULLINS and CHRISTY
DAWN PULLINS,

    Defendants.

_____/

**ORDER**

In this declaratory judgment action, Plaintiff Southern-Owners Insurance Company sues Midnight Tires Inc., and several other Defendants seeking a declaration that its garage liability policy does not cover the claims in an underlying motor vehicle injury lawsuit, and that it has no duty to defend or indemnify Midnight Tires in the suit. Now before the Court are Plaintiff's Motion for Summary Judgment (Doc. 49), Defendants' Response in Opposition (Doc. 55), Plaintiff's Reply (Doc. 58) and the Parties' Stipulation of Agreed Material Facts (Doc. 54). The Court, having considered the briefing and being fully advised in the premises, will grant the Motion for Summary Judgment and enter declaratory judgment in favor of Southern-Owners Insurance Company.

I.      **FACTS AND BACKGROUND**[1]

The material facts are undisputed. On June 24, 2017, Melvin Rodriguez (president of Midnight Tires, Inc.) handed Luis Rafael Mateu Robles the keys to a 1998 Honda Civic so that Robles could drive the car and some other belongings to the Midnight Tires shop. Doc. 54 ¶¶ 24–25. On the way there, Robles was involved in an accident. *Id.* ¶¶ 7, 25. Subsequently, several individuals involved in the crash sued Robles and Midnight Tires. Doc. 36-1.

The initial complaint in the Underlying Action alleged that Midnight Tires owned the vehicle in question, but the Underlying Amended Complaint removed any allegations regarding the vehicle's ownership. Doc. 54 ¶¶ 32–33. In fact, Marydelin Rodriguez, Melvin Rodriguez's wife, purchased the vehicle ten days before the accident. *Id.* ¶ 8. Marydelin[2] was also an officer of Midnight Tires, serving as vice president. *Id.* ¶ 27. On June 14, she purchased the Honda Civic from a woman named Anacelis Garcia at Midnight Tires' business location. *Id.* ¶¶ 8–14. Marydelin paid Garcia with a $1,100 check from her joint bank account with Melvin. *Id.* ¶¶ 16, 18. After the car was delivered to Marydelin and Melvin, Melvin took possession of the car, controlled its use, and kept the keys to the car. *Id.* ¶¶ 19–21. After June 14, Melvin

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the Parties' submissions, including the Stipulation of Agreed Material Facts (Doc. 54). For purposes of summary judgment, the Court considers the facts in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.

[2] This Order refers to Marydelin Rodriguez by her first name so as to distinguish her from her husband Melvin Rodriguez.

2

considered himself and Marydelin to be the owners of the car. *Id.* ¶ 22. Furthermore, in an entry made on July 31, 2017, the Florida Department of Motor Vehicle Title Transaction History for the car states that the vehicle was sold to Meliven [sic] and Marydelin Rodriguez on June 14, 2017. *Id.* ¶ 29. Midnight Tires, Inc. did not lease or rent the car at any time. *Id.* ¶¶ 30–31.

### A. The Garage Liability Policy

At the time of the accident, Midnight Tires held a Southern-Owners Garage Liability insurance policy ("the Policy"), policy #46-104-299-01 that is at the core of this case. The Declarations for the Policy stated that a premium was paid for bodily injury and property damage for Garage Liability Division II. *Id.* ¶ 2. The Policy provides as follows, in part:

> "Section II – Coverage
>
> Coverage A – Bodily Injury and Property Damage Liability
>
> 1. Coverage . . .
>
>     b. Bodily Injury and Property Damage Liability (Auto)
>
>     When a premium is shown in the Declarations for:
>
>     (1) Either DIVISION I or DIVISION II, we will pay damages for bodily injury and property damage for which the insured becomes legally responsible because of or arising out of an auto or farm implement:
>
>     (a) Not Owned, not hired, not leased not rented or not registered by you, any partner if you are a partnership, member if you are a limited liability company or officer if you are an organization other than a partnership, limited liability company or joint venture; and
>
>     (b) While used by any person in your business" *Id.* ¶ 3.

3

The Policy also contains the following Endorsement:

" . . . We will pay those sums you become legally obligated to pay as damages because of bodily injury or property damage arising out of the maintenance or use of an auto or farm implement

a. You do not own;

b. Which is not registered in your name;

c. Which is hired, leased or rented by you or on your behalf with your expressed permission and

d. Which is used in:

(1) Your garage business; or

(2) A business, other than your garage business, but not on a regular basis.

All other policy terms and conditions apply." *Id.* ¶ 4.

The Policy defines "you" or "your" as:

"Definitions . . .

LL. You or your means the named insured shown in the Declarations and if an individual, your spouse who resides in the same household." *Id.* ¶ 5.

The named insured in the Declarations on the Policy is listed as "Midnight Tires, LLC." *Id.* ¶ 6.

Southern-Owners filed this declaratory judgment action in August 2021 (Doc. 1) and amended its complaint on February 1, 2022. Doc. 36. Prior to amending its Complaint, Plaintiff moved for Clerk's defaults against Defendant Robles and Defendant Midnight Tires (Docs. 19, 24), and both motions were granted (Docs. 20, 26). Now before the Court is Southern-Owners' Motion for Summary Judgment (Doc.

49), to which Defendants Roy Christopher Pullins, Donna Faye Pullins, and Christy Dawn Pullins (the "Pullins Defendants") respond (Doc. 55).

## II.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving

5

party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).

    B.    **Applicable Law**

A federal court sitting in diversity must apply both the substantive law of the forum, as well as the conflict-of-law rules of the forum state. *LaFarge Corp. v. Travelers Indemnity Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997). "Florida follows the rule of *lex loci contractus* – that is, Florida courts apply the law of the jurisdiction in which the contract was entered into." *State Farm Mut. Auto. Ins. Co. v. Duckworth*, 648 F.3d 1216, 1218 (11th Cir. 2011). "That rule, as applied to insurance contracts, provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006) (citing *Sturiano v. Brooks*, 523 So. 2d 1126, 1129 (Fla. 1988)).

The Southern-Owners policy was issued to Midnight Tires in Florida. The Parties provide no evidence that the insurance contract was entered into in another jurisdiction. In their submissions, both parties cite to and rely on Florida law for the interpretation of the policy and the determination of the issues before the court. Doc. 49 at 11; Doc. 55 at 1. The Court agrees that Florida law governs this dispute.

## III. DISCUSSION

Plaintiff argues that the Policy does not cover liability arising out of the use of an auto owned by Defendant Midnight Tires or any of its officers. Doc. 49 at 2. Here, because it is undisputed that the accident vehicle was owned by two Midnight Tires officers, Plaintiff claims it is entitled to summary judgment on the issues of coverage, its duty to defend, and its duty to indemnify. *Id.* at 2–3. Plaintiff concedes that the "eight corners" rule generally governs disputes over an insurer's duty to defend. *Id.* at 11–12. However, it argues that the undisputed evidence in this case rules out the possibility of any claims in the Underlying Action being covered, and that the Court thus may consider the extrinsic evidence under an exception to the rule recognized under Florida law and the Eleventh Circuit. *Id.* at 12–15.

The Pullins Defendants respond that the Court lacks subject matter jurisdiction to determine the duty to indemnify issue until the underlying lawsuit is decided, and that under the eight corners rule, Southern-Owners must defend Midnight Tires based on the claims in the Underlying Amended Complaint. Doc. 55 at 1. Furthermore, the Pullins Defendants argue that the Court is "circumscribed" from ruling otherwise, and that it cannot consider any extrinsic evidence. *Id.* at 10. Plaintiff replies that they are wrong on both points and that the Court may consider evidence beyond the underlying complaint when undisputed facts place the claims outside the scope of coverage, and that the ripeness arguments fail because a determination that there is no duty to defend logically (and as a matter of law) leads to a finding that there is no duty to indemnify either. *See* Doc. 58.

7

Under Florida law, "an insurer's duty to defend its insured against a legal action 'arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage.'" *Addison Ins. Co. v. 4000 Island Boulevard Condo. Ass'n,* 721 F. App'x 847, 854 (11th Cir. 2017) (quoting *Jones v. Fla. Ins. Guar. Ass'n, Inc.,* 908 So. 2d 435, 442-43 (Fla. 2005)). An insurer has a duty to defend even if the complaint's allegations are factually incorrect or without merit and even if part of the allegations fall outside policy coverage. *Id.*

Most often a court will look only to the four corners of the underlying complaint and the four corners of the insurance policy in deciding whether there is a duty to defend. This has been dubbed the "eight corners rule." *Id.* However, the Eleventh Circuit has recognized "a limited exception to the eight corners rule, in which a court may consider extrinsic facts 'if those facts are undisputed, and, had they been pled in the complaint, they clearly would have placed the claims outside the scope of coverage.'" *Id.* (quoting *Stephens v. Mid-Continent Cas. Co.,* 749 F.3d 1318, 1323 (11th Cir. 2014)). The exception "is limited to 'exceptional cases in which courts have crafted an equitable remedy when it is manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage.'" *Id.* (quoting *Stephens*); *see also Wilson v. Gen. Tavern Corp.,* 469 F. Supp. 2d 1214, 1220 (S.D. Fla. 2006) ("[T]he [underlying] complaint omitted [a] crucial, undisputed fact in a patent attempt to 'plead into coverage.'").

Here, the Policy covers damages for bodily injury that the insured—Midnight Tires, Inc.—is legally responsible for arising out of an auto "not owned" by "[Midnight

8

Tires] . . . or . . . any officer if [Midnight Tires is] an organization other than a partnership, limited liability company or joint venture." Doc. 49-1 at 20.

The Parties have stipulated that Melvin and Marydelin Rodriguez, officers of Midnight Tires, Inc., owned the car at the time of the accident, and this finding is also supported by the evidentiary record. Doc. 54 ¶¶ 8–23. Specifically, as the Pullins Defendants concede, the couple purchased the car, took possession of its use, and considered themselves to own the car after buying it ten days earlier. *Id.* ¶¶ 12–19; *see Dixie Ins. Co. v. Detamore*, 515 So. 2d 1390, 1392 (Fla. 5th DCA 1987) (holding that purchaser owned a subject vehicle when they paid the purchase price, took possession of it, and now exercised "the right to control and possess it."). Although the Response touts that Midnight Tires itself did not own the accident vehicle (Doc. 55 at 7), the coverage analysis remains the same because the Policy excludes damages arising out of the use of an auto owned by any officer of Midnight Tires as well. As such, the Court finds that the unambiguous language of the Policy excludes the underlying claims in this case from coverage.

And the Pullins Defendants do not put forth any evidence or legal argument to support that the Policy in fact covers the underlying claims. Instead, they argue that technically, based on the phrasing of the Underlying Amended Complaint, the Court must find that Southern-Owners has a duty to defend Midnight Tires. The Court acknowledges the argument that the "eight corners" rule would normally apply, here, under Florida law. However, it is undisputed that the accident vehicle was owned by an officer of Midnight Tires (two officers, in fact), and the Pullins Defendants do not

9

allege that the vehicle was owned by somebody else. Because this undisputed evidence clearly excludes the underlying claims from coverage under the Policy, the Court agrees with Plaintiff that the operative underlying complaint cannot be fairly read to contain claims that may be covered by the Policy. Thus, this is just the scenario where the exception to the eight corners rule is appropriate, for the fact that "[a]t some point in legal pleadings, common sense should prevail, which is in essence the basis for the limited exception to the four corners rule." *BBG Design-Build, LLC v. S.-Owners Ins. Co.,* No. 3:18-CV-1392-TKW-EMT, 2019 WL 7347182, at *3 (N.D. Fla. Oct. 11, 2019), *aff'd,* 820 F. App'x 962 (11th Cir. 2020).

In summary, undisputed extrinsic evidence shows that the Policy does not cover the underlying claims. Thus, this case falls within the exception to the eight corners rule, and the Court finds it appropriate to consider the uncontroverted extrinsic evidence in determining that Plaintiff has no duty to defend. Based on the undisputed evidence of the vehicle's ownership, there is no coverage under the Southern-Owners' Policy for the claims in the underlying action, Southern-Owners has no duty to defend Midnight Tires, and it also has no duty to indemnify Midnight Tires against the underlying claims. *See Council v. Paradigm Ins. Co.,* 133 F. Supp. 2d 1339, 1341 (M.D. Fla. 2001) (holding that the duty to defend an insured is broader than the duty to indemnify, and that if a Court finds that "[the insurer] had no duty to defend, then [the insurer] had no duty to indemnify the insured"); *see also Nova Cas. Co. v. Waserstein,* 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006) (citations omitted) ("The duty to defend is

broader than the duty to indemnify, and thus, where the insurer has no duty to defend, it necessarily has no duty to indemnify.").

Additionally, although not dispositive, the changes made to the Underlying Amended Complaint appear to have been crafted to plead into coverage. *See Wilson,* 469 F. Supp.2d at 1220. The claims in the initial Underlying Complaint were clearly excluded by the Policy because the complaint alleged that Midnight Tires, Inc., owned the accident vehicle. Doc. 49-8 ¶ 5. The Underlying Amended Complaint excised this paragraph and now says nothing about the vehicle's ownership at all. *See* Doc. 49-9. Thus, the Amended Complaint appears to be aimed at triggering Plaintiff's duty to defend by eliminating any mention of the car's ownership. Nevertheless, as previously described, because it is undisputed that the accident vehicle was owned by two officers of Midnight Tires, the Court agrees with Southern-Owners that the Underlying Amended Complaint does not trigger a duty to defend or a duty to indemnify.

Finally, with regard to Defendant Midnight Tires and Defendant Robles, Plaintiff obtained Clerk's defaults against them before filing the amended complaint, which is the operative pleading. Docs. 20, 26, 36. In this scenario, because a subsequent Clerk's default was not obtained after the filing of the amended complaint, it does not appear that default judgment against either party would be proper. *See Phoenix Ent. Partners, LLC v. Jellyfish, LLC,* No. 3:17-cv-929, 2018 WL 10517181, at *1 (N.D. Fla. Apr. 12, 2018) (collecting cases for proposition that "federal district courts have consistently concluded that the filing of an amended complaint moots a previous entry of default and/or motion for default judgment"); *Prou v. Giarla,* No. 13-24266-

11

CIV, 2014 WL 12621907, at *2 (S.D. Fla. June 25, 2014) (stating that the filing of an amended complaint voids a previously issued Clerk's default). *See also Trapenard v. Clester,* No. 6:22-CV-660-RBD-LHP, 2023 WL 2633335, at *2 (M.D. Fla. Mar. 24, 2023). Thus, Plaintiff is ordered to show cause as to why its remaining claims should not be dismissed, for failure to prosecute, in light of the fact that it has not moved for Clerk's defaults and default judgment on the basis of the amended complaint and pursuant to Federal Rule of Civil Procedure 55.

Accordingly, for the reasons stated above, it is **ORDERED** that:

1. Southern-Owners' Motion for Summary Judgment (Doc. 49) is **GRANTED.**

2. As a matter of law, Southern-Owners Insurance Company has no duty to defend or indemnify Midnight Tires, Inc. for the Underlying Lawsuits under the policy of insurance #46-104-299-01 issued to Midnight Tires, Inc.

3. Plaintiff is **ORDERED** to show cause why its claims against Robles and Midnight Tires, Inc. should not be dismissed for failure to prosecute its claims and move for a Clerk's default and default judgment on its Amended Complaint. Plaintiff must respond within **FOURTEEN (14) DAYS** of this Order. Failure to respond will result in the dismissal of Plaintiff's remaining claims, without prejudice, without further notice, as to Defendants Robles and Midnight Tires, Inc..

4. The Clerk is directed to terminate all pending motions and deadlines. A Declaratory Judgment will be entered by separate Order of the Court.

**DONE** and **ORDERED** in Tampa, Florida on September 19, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties